COMMONWEALTH *vs.* PAUL R. TISSERAND.

Middlesex.    January 17, 1977. — June 2, 1977.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Search and Seizure,* Automobile. *Constitutional Law,* Search and seizure, Admissions and confessions, Waiver. *Arrest.*

There was no error in the denial of a motion to suppress evidence found during a routine inventory search of an automobile about to be towed even though the searching officer suspected that evidence of criminal activity might be uncovered as a result of the search. [386-387]

Where it appeared in a criminal proceeding that the defendant was advised of his Miranda rights, that he responded on two occasions that he understood his rights, and that he then made inculpatory statements to the police, the judge did not err in finding the defendant's statements were voluntary even though the defendant did not explicitly waive his rights or execute a written waiver. [387]

In a criminal proceeding, there was sufficient evidence to warrant a finding that the defendant made a knowing and intelligent waiver of his Miranda rights even though there was evidence that he was under the influence of some unknown narcotic at the time he made inculpatory statements to the police. [387-389]

Statements made by a defendant who had been arrested on information from the police department computer that there was an outstanding warrant against him, which was later found to have been rescinded, were not the result of police exploitation of an illegal arrest and were admissible. [389-390]

INDICTMENT found and returned in the Superior Court on April 15, 1975.

The case was tried before *Moynihan, J.*

*Dyanne Klein Polatin* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney (*James W. Sahakian,* Special Assistant District Attorney, with him) for the Commonwealth.

KEVILLE, J.   The defendant appeals under G. L. c. 278, §§ 33A-33G, from a conviction of armed robbery after a jury trial. The defendant assigns as error the denial of his motion to suppress physical evidence and oral statements made by him. The evidence presented at the hearing on the motion to suppress may be summarized as follows.

At approximately 6:00 P.M. on December 27, 1974, a Cambridge bookstore was robbed by a man armed with a silver-colored gun, wearing a white glove on his right hand and an olive-colored parka. The robber entered the bookstore, ordered the manager to empty the contents of the cash register into a bag, and forced the sole customer to surrender his money. The robber then escaped. Later the same evening a Boston police officer arrested the defendant on Dartmouth Street in Boston along with a female companion who had been driving a car in which the defendant was a passenger. The police had been observing the car while it was traveling through an area characterized as a "high crime" and high-drug traffic area. It had stopped first in front of an establishment known to the police as a resort for drug sellers and users. The driver beckoned to two men standing in front of a lounge who approached the car but retreated when they saw the police cruiser. The car then went around the block and double parked in front of an apartment building. The driver got out and entered the building. She emerged several minutes later. The car proceeded to Dartmouth Street and double parked again.

Having followed the car, the police cruiser pulled up behind it and an officer approached the driver's side of the

car. As he did, he noticed that the passenger in the front seat, the defendant, was "slouched down" with his right hand between his legs about a foot from the car floor. He also recognized the driver as "a girl being in and out of the courts down in Boston." He asked her for her license and registration. She took the license from a brown shoulder bag and the registration from the glove compartment of the car which was not registered in her name. A check revealed that there were two outstanding warrants for the driver. She was arrested. When questioned about the brown shoulder bag, she denied owning it. The contents of the bag included identification cards, checks and checkbooks belonging to different persons. The officer then questioned the defendant and ran a warrant check on him. After receiving information that there was a warrant outstanding against him for a parole violation, the officer arrested him, patted him down, handcuffed him and placed him in the cruiser.

After the defendant and the woman driver had been arrested and placed in the police cruiser, the police called for a tow truck to remove the car from its double parked position on Dartmouth Street. Before the car was towed, the police conducted an inventory search pursuant to normal police procedure. Under the front passenger seat they found a loaded "white metal" revolver, a yellow ski hat and a bag bearing the name of the robbed bookstore and containing money and torn checks. On the back seat, police found a snorkel jacket (later identified by one of the victims of the bookstore robbery as being similar to that worn by the robber) which had a white glove in one of the pockets. The defendant was taken to District 4 police station in Boston. The Boston police notified the Cambridge police that they had found these items and the Cambridge police sent two detectives to District 4 to question the defendant. Statements which he made to the detectives led to his indictment for the robbery of the Cambridge bookstore. The following day it was discovered that the information received by the arresting officer via

radio at the scene of the arrest was erroneous, and that
the warrant for the defendant's arrest had in fact been
rescinded.

Prior to his trial in the Superior Court for the bookstore
robbery, the defendant moved to suppress the physical
evidence seized from the car in which he was a passenger,
evidence taken from his person and any statements ob-
tained from him. After a hearing, the judge denied the
motion. The defendant excepted to the judge's refusal to
suppress this evidence and has appealed from both of these
rulings.

1. The denial of the motion to suppress the physical
evidence seized from the automobile in which the defend-
ant was a passenger was proper. The defendant contends
that the search of the automobile was invalid having been
conducted without a valid warrant and not being covered
by any recognized exception to the warrant requirement.
But the judge found that the police had acted reasonably
in having the vehicle towed because it was double parked
and was obstructing traffic in a congested area of the city
at a busy time of day. He further found that the search
was conducted pursuant to routine police procedure fol-
lowed in Boston which required that police officers make
an inventory search of a car before permitting it to be
towed in order to secure any items of value that might be
in the vehicle. The defendant claims that the search cannot
be justified as a routine inventory search because the
officer who searched the car admitted that among the rea-
sons for the search of the vehicle was his suspicion that he
would find evidence of a crime.

While it is true that the United States Supreme Court
in *South Dakota* v. *Opperman,* 428 U.S. 364 (1976), indi-
cated that an inventory search would not be upheld if
there were a "suggestion ... that this standard procedure"
was a pretext concealing an investigatory police motive
(*id.* at 376), it is also true that taking an inventory of the
contents of a car about to be towed or impounded is a
reasonable procedure; and the fact that the searching
officer may have harbored a suspicion that evidence of

criminal activity might be uncovered as a result of the search should not vitiate his obligation to conduct the inventory. We agree with the finding and ruling of the judge that the search was reasonable and that the items seized as a result of the search were properly admitted.

2. The denial of the motion to suppress the defendant's oral statements was proper. As we have already related in part, as a result of information received from the Boston police, two Cambridge detectives visited the defendant in his cell at a Boston police station. After reading the Miranda warnings to the defendant, one of the detectives showed him the items found under the seat of the car (the loaded revolver, the bookstore bag and a yellow ski hat) and asked him if he wanted to talk about the robbery. The defendant said that he understood his rights and that he had committed the robbery alone. Although the detective noticed that the defendant appeared to be under the influence of a drug, he found him to be coherent in both speech and general behavior. In denying the motion to suppress, the court found that the statements made to the Cambridge police were freely and voluntarily made and that the defendant knowingly and intentionally waived his right to remain silent; the court ruled that the statements were therefore admissible.

The defendant argues: (a) that the statements were involuntary in that he had not waived his right to remain silent and (b) that his statements were tainted fruits of his unlawful arrest.

*Voluntariness.*

The defendant claims that there was insufficient evidence to prove that his statements to the Cambridge police were voluntary, because there was no explicit waiver and he was not asked to execute a written waiver. The defendant responded to the police on two occasions that he understood his Miranda rights. Moreover, it has been determined that the Constitution does not require that there be a written waiver in order for a court to find that an individual has knowingly and intelligently waived his

Miranda rights. "The absence of a written waiver is not crucial if...it can be found that in the circumstances a knowing and intelligent waiver took place." *Commonwealth* v. *Roy*, 2 Mass. App. Ct. 14, 20 (1974).

The judge here, upon examining the circumstances, found that the defendant had been properly advised of his Miranda rights. He was asked if he understood those rights and he responded affirmatively. He was also informed that all questioning would cease whenever he might wish. The defendant then agreed to talk to the police about the robbery and admitted that he had committed it. "The trial judge is in a far better position to determine the existence of a knowing, intelligent and voluntary waiver than is an appellate court; his findings are entitled to 'substantial deference.' *United States* v. *Springer*, 460 F. 2d 1344, 1348 (7th Cir.) [cert. den. 409 U.S. 873 (1972)]." *Commonwealth* v. *Roy*, 2 Mass. App. Ct. at 19.

The defendant suggests that he may have been incapable of making a knowing and intelligent waiver as there was evidence that he was under the influence of drugs. The defendant offered no testimony at the pretrial hearing to show his lack of capacity other than the observation of the arresting officer that he appeared to be "under the influence of narcotics, or a pill." Compare *Commonwealth* v. *Fielding*, 371 Mass. 97, 109-112 (1976). It cannot be said that the defendant's appearance or behavior was such that his interrogators should have discerned, and the judge should have found, that he could not comprehend the significance of his actions. See *Commonwealth* v. *Roy*, *supra; United States* v. *Young*, 355 F. Supp. 103, 108 (E.D. Pa. 1973). The defendant made no request for medical attention, nor did he indicate any mental or physical ailment. Contrast *United States* v. *Watson*, 469 F. 2d 362 (5th Cir. 1972). The judge found that the defendant, although under the influence of some unknown narcotic, "did understand the questions which were being put to him and that [he] fully understood what his rights were in connection with the interrogation and that he voluntarily waived his right to remain silent." Having examined

Commonwealth v. Tisserand.

the totality of the circumstances leading up to the waiver, including the conduct and characteristics of the accused and the details of the interrogation (*Commonwealth* v. *Daniels,* 366 Mass. 601, 606-607 [1975]), we hold that there was ample evidence to support the judge's conclusion that the defendant validly waived his right to remain silent. *Commonwealth* v. *Johnson,* 3 Mass. App. Ct. 226, 230-231 (1975).

### Fruits of the Poisonous Tree.

As recited earlier in the opinion, the arresting officer had learned subsequent to the defendant's interrogation by the Cambridge police that the warrant for his arrest had in fact been rescinded. The defendant argues that his statements to the Cambridge police "were so intimately connected to [his] unlawful arrest that they should have been viewed as its inadmissible fruits." The defendant claims that the standards articulated in *Brown* v. *Illinois,* 422 U. S. 590 (1975), require the suppression of his statements. In reversing the defendant's conviction in *Brown,* the Supreme Court examined the problem of the admissibility of a confession obtained after a warrantless arrest without probable cause. In rejecting the State's contention that the giving of Miranda warnings alone was sufficient to render the confession admissible, the Court stated: "The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct are all relevant. . . . The voluntariness of the statement is a threshold requirement." *Brown, supra,* at 603-604. The Court then found that the illegality of Brown's arrest had a "quality of purposefulness" and that the arresting officers were aware of its impropriety and were using it for investigatory purposes.

The factors enunciated in *Brown* were recently applied by the Supreme Judicial Court in upholding the admission

Commonwealth *v.* Tisserand.

of a confession obtained after a defendant had been arrested on a warrant found to lack probable cause. In *Commonwealth* v. *Fielding*, 371 Mass. at 114, the court held that "[t]he breach of the Fourth Amendment was not a deliberate one committed by the police with a purpose to facilitate the procuring of a statement from Fielding. Significantly, the police did not proceed on their own, but sought and obtained a warrant. They lacked sufficient information to measure up to probable cause, but their misbehavior cannot be called flagrant. In these circumstances, outlawing Fielding's statement would hardly have served an important demonstrative purpose of deterring the police from future malfeasance." As in *Fielding*, the police in the instant case, at the scene of the arrest, were not proceeding on their own initiative, but on information received from the police department computer. Although there was, in fact, no valid warrant outstanding, the police misbehavior here cannot be characterized as flagrant. We conclude that the statements by the defendant were not the result of police exploitation of an illegal arrest and that the judge was correct in his finding and ruling that they were voluntary and therefore admissible.

*Judgment affirmed.*