COMMONWEALTH vs. PAUL B. BACON
(and two companion cases[1]).

Suffolk.   December 10, 1979. — May 27, 1980.

Present: ARMSTRONG, ROSE, & KASS, JJ.

*"Threshold" Police Inquiry.   Search and Seizure.   Constitutional Law,*
Search and Seizure.

Police officers who observed two youthful appearing males driving on a
deserted street in a relatively expensive automobile in the early morn-
ing hours and saw the driver raise his left hand to his face, as the of-
ficers passed him, in an apparent attempt to obscure his face from
their view, could reasonably have suspected criminal activity on the
part of the occupants of the automobile and were justified in stopping
the automobile for the purpose of making a brief threshold inquiry.
[769]

Police officers who had properly stopped an automobile for the purpose of
making a brief threshold inquiry were justified in making a limited
protective search of the occupants where they knew that one of the oc-
cupants had previously been arrested for possession of a firearm, and,
upon observing a shotgun in plain view on the floor of the automobile,
they were warranted in making a further search of those areas of the
automobile from which access to a weapon might be had.   [769]

INDICTMENTS found and returned in the Superior Court
on May 12, 1977.

A pretrial motion to suppress evidence was heard by *Ro-
nan, J.*

An application for an interlocutory appeal in the Su-
preme Judicial Court for the county of Suffolk was allowed
by *Liacos, J.*, and transferred by him to the Appeals Court.

*Daniel E. Callahan* for Arthur Davis.

*Arthur H. Goldsmith* for Paul B. Bacon.

[1]One companion case is against Paul B. Bacon and the other is against
Arthur Davis.

*Brian J. Dobie,* Assistant District Attorney, for the Commonwealth.

Rose, J.   The defendants are awaiting trial on their indictments for violations of G. L. c. 269, § 10(*a*).   The defendant Bacon was charged with unlawfully carrying a handgun on his person, and both defendants were charged with possession of a sawed-off shotgun found in an automobile operated by Bacon.   Each defendant filed a motion seeking to suppress the physical evidence seized by police officers after an investigative stop and warrantless search. After hearing, a judge of the Superior Court denied the defendants' motions, and the defendants applied for an appeal under G. L. c. 278, § 28E.   A single justice of the Supreme Judicial Court granted the interlocutory appeals, and the matter was transferred to this court.

Based upon the "specific and articulable facts" adduced at the suppression hearing (*Terry* v. *Ohio,* 392 U.S. 1, 21 [1968]; *Commonwealth* v. *Silva,* 366 Mass. 402, 406 [1974]), the motion judge ruled that the police officers were justified in stopping the defendants' vehicle for the purpose of making a brief threshold inquiry, and that the scope of the ensuing search did not exceed constitutional limits.   We agree with the judge's conclusion.   The facts, taken from the judge's memorandum, are as follows.   While on cruiser patrol on March 12, 1977, at 4:10 a.m., Boston Police Officers Carey and Martin observed two young or youthful appearing males, one the driver of and the other a passenger in a 1973 Cadillac automobile, driving on Washington Street and approaching and then passing through the intersection of Washington Street with Marcella and Brinton Streets.[2]

---

[2] At the hearing, the police officers testified that the traffic light at the intersection was showing red in the defendants' direction as they passed through.   The judge found that the Commonwealth did not sustain its burden of proving that fact, in light of the evidence presented by the defendants' witness, an employee of the Boston Traffic and Parking Division, that the lights at the intersection of Marcella and Washington would have been on yellow flashing mode in both directions on Washington Street from 11:00 p.m. to 7:00 a.m.

As the officers turned from Brinton onto Washington Street and passed the defendants, Officer Martin, who was driving the police cruiser, observed the driver of the Cadillac raise his left hand to his face in an apparent attempt to obscure his face from the view of the oncoming and passing police, who were attempting to observe the Cadillac's interior. Officer Martin testified that it appeared to him that the defendant "didn't want to be recognized by a Boston uniformed officer." Within seconds after the vehicles had passed, Martin made a U-turn to follow the Cadillac. The Cadillac continued north on Washington Street at a slow but steady speed. As the cruiser closed the distance between the cars, the cruiser's blue lights were activated, and for a few seconds there was no discernible change in the speed or the course of the Cadillac. Officer Martin then engaged the siren. He pulled his cruiser out from behind the Cadillac and placed the cruiser somewhat abreast of and slightly ahead of it, thereby obstructing its progress and forcing it to a halt.

Officer Carey alighted and approached the driver of the Cadillac to request his license and automobile registration. Officer Martin approached the passenger side of the Cadillac, and immediately recognized that the passenger was Davis (one of the defendants).[3] In an encounter between Martin and Davis some time during the previous year, Davis, as the operator of a stolen car being pursued by Martin, had intentionally rammed into Martin's police cruiser, and had subsequently been arrested. Martin also knew that Davis had previously been arrested for unlawful possession of a firearm. Martin then opened the door of the Cadillac to illuminate the interior of the automobile (the immediate area not being well illuminated) and to talk with Davis, and he

---

[3]Based upon our review of the evidence, we conclude that the judge was not warranted in inferring that Martin had recognized Davis prior to this time. Officer Martin testified that he first recognized Davis when he approached the Cadillac after the stop and saw Davis through the passenger window. Both officers testified that, prior to the stop, neither had recognized either of the occupants of the Cadillac.

saw, on the floor between the engine firewall and seat, under Davis' legs, the barrel of a sawed-off shotgun pointed in Martin's direction, protruding from under a jacket or coat. Martin alerted his partner and drew his service revolver. Both defendants were ordered from the car and frisked. A search of the defendants revealed a fully loaded handgun in defendant Bacon's left front pants pocket.

1. In light of the circumstances and the facts known to the officers when they initiated the stop, such as the suspects' youthful appearance, the relatively expensive automobile in which they were traveling, the time of night and the deserted street, together with the Cadillac operator's apparently evasive movement in obscuring his face from view, we think that the officers could reasonably have suspected criminal activity on the part of the defendants and were justified in initiating a brief stop "to determine [their] identity or to maintain the status quo momentarily while obtaining more information . . . ." *Adams* v. *Williams*, 407 U.S. 143, 146 (1972). See *Commonwealth* v. *Matthews*, 355 Mass. 378, 381 (1969); *Commonwealth* v. *Silva*, 366 Mass. at 405, and cases cited; *Commonwealth* v. *Almeida*, 373 Mass. 266, 268-269, 271-272 (1977); *Commonwealth* v. *Tisserand*, 5 Mass. App. Ct. 383, 384-385, 386 (1977). Cf. *Delaware* v. *Prouse*, 440 U.S. 648, 663 (1979). Contrast *Brown* v. *Texas*, 443 U.S. 47, 50-52 (1979); *Commonwealth* v. *Stinson*, 6 Mass. App. Ct. 899 (1978). See generally, 3 LaFave, Search & Seizure § 9.3(c), at 69-82 (1978).

2. Once the stop had been effected and Officer Martin had recognized the defendant Davis, a limited protective search for weapons was justified, given the knowledge Martin then possessed regarding his past encounter with Davis and Davis' prior arrest for possession of a firearm, in addition to the officers' observations of the defendants' actions, the time of night and the isolated area of the stop. Upon these facts, a reasonably cautious police officer would have been warranted in believing that the officers' safety was in jeopardy. The unannounced opening of the passenger door of the Cadillac by Officer Martin was not an unreasonable

intrusion, because the officer was justified in believing that the suspect was dangerous and might be armed. See *Terry v. Ohio,* 392 U.S. at 27; *Pennsylvania* v. *Mimms,* 434 U.S. 106, 111-112 (1977); *Commonwealth* v. *Matthews,* 355 Mass. at 381; *Commonwealth* v. *Hawkes,* 362 Mass. 786, 787, 789-790 (1973); *Commonwealth* v. *Silva,* 366 Mass. at 405-407. Cf. *Ybarra* v. *Illinois,* 444 U.S. 85, 92-93 (1979); *Commonwealth* v. *Cantalupo,* 380 Mass. 173, 176 n.1 (1980). The shotgun was in plain view upon illumination by the interior automobile light, and the ensuing search was restricted to those areas from which access to a weapon might be had. We conclude that the scope of the search was justifiable in the circumstances shown and did not exceed constitutional limits. See *Commonwealth* v. *Almeida,* 373 Mass. at 270-272. Contrast *Commonwealth* v. *Silva,* 366 Mass. at 407-410; *Commonwealth* v. *Ferrara,* 376 Mass. 502, 505 (1978).

There was no error in the judge's denial of the defendants' motions to suppress. The order denying the motions to suppress is affirmed.

*So ordered.*