## Commonwealth vs. Paul B. Bacon
### (and two companion cases[1]).

Suffolk.   September 10, 1980. — October 16, 1980.

Present: Hennessey, C.J., Braucher, Wilkins, Liacos, & Abrams, JJ.

*"Threshold" Police Inquiry. Search and Seizure. Constitutional Law,*
Search and seizure.

The fact that two youthful appearing men were operating a relatively
expensive motor vehicle at 4:10 a.m. on a Saturday morning in Boston
did not, without more, warrant a reasonable suspicion of criminal ac-
tivity that would justify police in stopping the automobile for in-
vestigation.  [644-647] Braucher, J., dissenting.

Indictments found and returned in the Superior Court
on May 12, 1977.

A pretrial motion to suppress evidence was heard by
*Ronan, J.*

An application for interlocutory appeal in the Supreme
Judicial Court for the county of Suffolk was allowed by
*Liacos, J.,* and transferred by him to the Appeals Court.

After review by the Appeals Court the Supreme Judicial
Court granted leave to obtain further appellate review.

*Daniel E. Callahan* for Arthur Davis.

*Arthur H. Goldsmith* for Paul B. Bacon.

*Michael J. Traft,* Assistant District Attorney, for the
Commonwealth.

Wilkins, J. We are concerned here with whether the
defendants' State and Federal constitutional rights were

---

[1] One companion case is against Paul B. Bacon and the other against
Arthur Davis.  The defendant Bacon challenged the validity of the indict-
ments against him claiming that they failed to allege that the defendant
knowingly possessed the firearms.  See *Commonwealth* v. *Bacon,* 374
Mass. 358 (1978).  We held that knowing possession need not be alleged in
the indictment but must be proved at trial.  *Id.* at 361.

violated by a warrantless search of a motor vehicle. Each is charged with the unlawful possession of one or more firearms that were found when two Boston policemen, operating a marked cruiser, stopped them on Washington Street in Boston about 4:10 A.M. on a Saturday morning in March, 1977. The Commonwealth argues the stop was constitutionally justified because of the defendants' youthful appearance and their occupancy of a relatively expensive car at that time of night, coupled with the driver's obstruction of his face from view with his hand. The Commonwealth does not and may not rely on the police officers' testimony that the motor vehicle went through a red light. The motion judge in effect disbelieved that testimony. A judge of the Superior Court denied the motions to suppress the weapons, and the Appeals Court affirmed his action. *Commonwealth* v. *Bacon,* 9 Mass. App. Ct. 766 (1980). We granted the defendants' application for further appellate review. We reverse because the police were not justified in stopping the vehicle.

Because no claim is made, or could be made, that the police had probable cause to stop the vehicle, the issue is whether the police were justified in stopping the vehicle to conduct an inquiry under the principles first set forth in *Terry* v. *Ohio,* 392 U.S. 1 (1968). Those principles have been applied to the stopping of a motor vehicle as well as to the stopping of a pedestrian. *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974), and cases cited. See *Delaware* v. *Prouse,* 440 U.S. 648, 663 (1979). A police officer is warranted in making a threshold inquiry "where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Silva, supra* at 405. See *Commonwealth* v. *Almeida,* 373 Mass. 266, 270-271 (1977). That action must "be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience. A mere 'hunch' is not enough. Simple good faith on the part of the officer is not enough. The test is an objective one." *Commonwealth* v.

*Silva, supra* at 406. Each case depends on its own facts. *Commonwealth* v. *Ling,* 370 Mass. 238, 241 (1976).

Where the police have observed a traffic violation, they are warranted in stopping a vehicle. See *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 278, 281 (1974); *Commonwealth* v. *Hawkes,* 362 Mass. 786, 788 (1973); *Pennsylvania* v. *Mimms,* 434 U.S. 106, 109 (1977). See also *Commonwealth* v. *Tisserand,* 5 Mass. App. Ct. 383, 384 (1977), where a traffic violation was accompanied by suspicious conduct. Similarly, investigation of the circumstances of an occupied vehicle parked in a high crime area in the middle of the night may be warranted. See *Commonwealth* v. *Almeida,* 373 Mass. 266, 271-272 (1977) (vehicle parked in a private parking space with its lights out and motor running); *Adams* v. *Williams,* 407 U.S. 143, 146 (1972) (police informed that occupant had narcotics and a concealed weapon). However, the police are prohibited under the Fourth Amendment to the Constitution of the United States from stopping a particular vehicle at random simply because they want to check the driver's license or the registration of the motor vehicle. See *Delaware* v. *Prouse,* 440 U.S. 648, 663 (1979). Likewise, a pedestrian may not be detained and required to identify himself when the police lack any reasonable suspicion to believe that that person was engaged or had engaged in criminal conduct. See *Brown* v. *Texas,* 443 U.S. 47, 52-53 (1979).[2]

We turn to the facts, found by the judge and warranted by the evidence, to determine whether, in light of the principles just stated, the police were justified in stopping the vehicle occupied by the defendants. If they were not justified in stopping the vehicle, the incriminating evidence discovered by the police must be suppressed.

---

[2] A brief on-the-street inquiry may well be reasonable and warranted, however, when the police encounter a pedestrian at night in an area where housebreaks have occurred and the pedestrian has bags or containers in which stolen property could be carried. See *Commonwealth* v. *Matthews,* 355 Mass. 378, 381 (1969); *Commonwealth* v. *Roy,* 349 Mass. 224, 228, 230 (1965); *Commonwealth* v. *Lehan,* 347 Mass. 197, 199-204 (1964).

About 4:10 A.M. on March 12, 1977, two police officers of considerable experience were in a marked police cruiser traveling easterly on Brinton Street in Boston. As they entered Washington Street and turned to the right, they observed a 1973 Cadillac headed northerly on Washington Street. They observed two "young or youthful" occupants of the Cadillac, which was slowing down as it approached the intersection. At or near the time the vehicles approached, the operator of the Cadillac "raised his hand to his face thereby effectively obscuring his facial features from the view of the passing policemen." Neither officer at that time identified either of the occupants of the Cadillac. The Cadillac continued through the intersection and resumed a slow but steady speed. The Cadillac did not commit any traffic violation.[3] The police cruiser turned around, overtook, and stopped the Cadillac. In circumstances that need not concern us, the police discovered a sawed-off shotgun on the floor of the front portion of the Cadillac and a handgun on the defendant Bacon.

The fact that two youthful appearing men[4] were operating a relatively expensive (but four year old) motor vehicle[5] at 4:10 A.M. on a Saturday morning on Washington Street in Boston does not alone warrant a reasonable suspicion of criminal activity that would justify a police investigatory stop. Nor is the Commonwealth aided materially because

---

[3] One police officer testified that the reason he stopped the vehicle was because it went through a red light. He made no mention of the operator's obstructing movement of his hand. The other officer testified that the red light violation was one of the reasons they pursued the Cadillac and that he had no reason to pursue it until after it went through the red light.

The judge did not credit the policemen's testimony that the Cadillac went through a red light at the intersection. An employee of the traffic and parking division of the city of Boston testified that its records showed that the light was flashing yellow for the Cadillac at the time it went through the intersection.

[4] There is no evidence that the operator appeared to be too young to be licensed to operate the motor vehicle.

[5] There was evidence that the vehicle was registered to the brother of one of the defendants.

the police were in uniform and occupying a marked police cruiser. If one or more further factors were present, a reasonable suspicion might be warranted. The only additional element bearing on whether the police could have had such a reasonable suspicion was the act of the operator, before entering the intersection, in raising his hand (presumably on seeing the police cruiser) so that his face was obscured.

As an appellate court we are reluctant to rule, as a matter of law, that an attempt to conceal one's face could never justify, in conjunction with other circumstances, a reasonable suspicion of criminal conduct warranting an investigatory stop. See 3 W. LaFave, Search and Seizure § 9.3(c), at 73-75 (1978). The trial judge saw a demonstration of what the operator did with his hand, and, of course, we have not. On the other hand, we think it is of controlling significance that the officer who saw that gesture did not immediately conclude that a stop was warranted and that the police did not decide to stop the Cadillac until, as the officers testified, the Cadillac went through a red light, an event the trial judge did not find took place. If the act of concealment (which may have been coincidental, responsive to the cruiser's headlights, or purposeful) did not raise the observing officer's suspicions to the point of causing him then to believe the Cadillac should be stopped, that act cannot justify the stop. No case has been cited to us, nor have we found one decided since *Terry* v. *Ohio*, 392 U.S. 1 (1968), in which an investigatory stop of a motor vehicle has been upheld on facts as sparse as those on which the Commonwealth relies in this case. The circumstances known to the police did not warrant the stop and subsequent search, and thus the defendants were denied their rights under the Fourth Amendment, as applied to the States by the Fourteenth Amendment, and under art. 14 of the Declaration of Rights to the Constitution of the Commonwealth.

The defendants' motions to suppress should have been allowed. The order denying the motions to suppress is re-

versed. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

BRAUCHER, J. (dissenting). I would affirm the order appealed from on the grounds stated by the Appeals Court. Contrast *Commonwealth* v. *Ferrara,* 376 Mass. 502, 504 (1978), where similar facts provided "a slender basis" for stopping a car. There the car was stopped in broad daylight; moreover, the troopers were not in uniform and were in an unmarked vehicle.