COMMONWEALTH vs. EUGENE C. THIBEAU.

Suffolk. February 26, 1981. — April 9, 1981.

Present: HALE, C.J., ARMSTRONG, & PERRETTA, JJ.

*Narcotic Drugs. Search and Seizure*, Threshold police inquiry, Bicyclist.
   *Due Process of Law*, Appeal, Sentence.

Where a police officer with experience and knowledge in the drug en-
   forcement field observed the defendant, who was riding a bicycle,
   turn into the face of oncoming traffic when he saw a police cruiser
   come alongside of him and thereafter pursued the defendant down a
   side street and where the defendant refused to stop despite the officer's
   use of a siren to signal the defendant to do so, the officer had probable
   cause to stop the defendant and to seize envelopes sticking out of the
   defendant's vest pocket which the officer recognized as the kind
   commonly used in the packaging of certain controlled substances.
   [679-680] PERRETTA, J., dissenting.
Evidence that a defendant had in his vest pocket nine envelopes contain-
   ing a controlled substance, that he fled from a police officer, and that
   he was riding a bicycle which was the common mode of transportation
   for drug peddlers in the area warranted a finding that he possessed the
   drugs with intent to distribute them. [680] PERRETTA, J. dissenting.
Where a District Court judge hearing an appeal from a conviction in the
   District Court made clear that he believed the sentence given in the
   first trial was too light considering the seriousness of the offense, the
   imposition of a sentence greater than that imposed after the first trial
   did not violate the defendant's due process rights. [680-681]

COMPLAINT received and sworn to in the West Roxbury
Division of the District Court Department on September 1,
1979.

Upon appeal to the Boston Municipal Court Department,
the case was heard by *Umana*, J.

*Robert J. Doyle* for the defendant.

*Peter A. Grabler*, Legal Assistant to the District Attorney
(*Sharon D. Meyers*, Assistant District Attorney, with him)
for the Commonwealth.

HALE, C.J.  The defendant has appealed from his conviction after a jury-waived trial in a District Court on a complaint charging possession with intent to distribute a Class C controlled substance (phencyclidine; commonly known as PCP or angel dust) and has assigned as error the denial of his motion to suppress, the denial of his motion for a required finding of not guilty, and the imposition of a sentence greater than that imposed in his initial District Court trial. There was evidence before the judge from which it could have been found that at about 10:10 P.M. on August 31, 1979, two police cruisers were travelling outbound on Center Street in Jamaica Plain.  The lead cruiser was marked, but the one following it, operated by Boston police Detective Ulrich, was not.  As the cruiser proceeded along Center Street, Detective Ulrich observed the defendant operating a ten-speed bicycle at a rate of speed of 15-20 miles per hour in the middle of Center Street, heading in the same direction as the police cars were.  Detective Ulrich testified to what he observed:  "As the marked vehicle pulled along side of him, he [the defendant] made a turn to his right and then just a quick left and went into the traffic and stuff.  It was just unusual movement.  And I pulled in right behind him and chased him down St. John Street."

The detective described that chase in these words:  "As I pulled in beside him, or behind him, it's a one-way street with cars parked on both sides, pulled behind him, he'd slow down and then he'd taken . . . off, and he'd slow down and take off, preventing us from going around him.  I sounded the siren several times, almost the length of St. John Street [about 200 - 250 yards] and then when there was an opening with parked cars, I pulled alongside of him and just grabbed him off the bike."  Detective Ulrich then forced the defendant against the hood of the police car so that the defendant was facing him, and while doing so saw three small brown manilla envelopes "sticking out of one pocket" of the defendant's vest.  The detective seized them and also six other similar envelopes from other pockets in the vest.  Each envelope contained a "greenish substance"

which the officer believed was marihuana but which on analysis proved to contain PCP.[1]

Detective Ulrich was an experienced police officer and had been a member of the police department for ten years and had served five years "in narcotics." During those five years he had made over 1,000 arrests for violations of the laws controlling narcotics. He testified that bicycles are a common form of transportation for drug peddlers in the area of the arrest, and that he had made "several dozen" arrests involving such use of bicycles. This use of bicycles was in the mind of the detective when he gave chase. Envelopes of the type seized from the defendant are commonly used in the packaging of marihuana and PCP.

1. A majority of the panel are of the opinion that the officer's experience and knowledge in the drug enforcement field and his observation of the unusual actions of the defendant in turning his bicycle into the face of oncoming traffic and proceeding down St. John Street when a marked police cruiser came alongside of him gave rise to a reasonable suspicion in the mind of the officer that the defendant was engaged in some sort of drug trafficking. We are of the opinion that at that point the officer had the right at least to stop and inquire of the defendant as to his business in the area. See and compare *Brown* v. *Texas*, 443 U.S. 47, 50-52 (1979). The officer's suspicion was bolstered by the defendant's refusal to stop despite the officer's repeated use of the siren to signal the defendant to do so. We are of the opinion that the facts observed by the detective and assessed by him in the light of his experience warranted his actions at each point in this situation. It was this type of reasonable police conduct that was approved in *Terry* v. *Ohio*, 392 U.S. 1, 20-27 (1968), and its progeny. See *United States* v. *Cortez*, 449 U.S. 411, 417-422 (1981). Compare and contrast *Commonwealth* v. *Bacon*, 381 Mass. 642, 643-644 (1980).

---

[1] It appears that the green substance was parsley which had been "laced" with PCP in its liquid form.

While the facts in *Commonwealth* v. *Blatz*, 9 Mass. App. Ct. 603 (1980), are somewhat more compelling than those in the present case, they are not so different in kind as to distinguish that case from the present. We regard it as authority for the position which we take.

We hold that the stop of the defendant and the seizure of the drugs did not violate the defendant's Fourth Amendment rights and that the motion to suppress was properly denied.

2. While the record does not disclose evidence of the quantity of the substance in each of the envelopes, it was reasonable to infer that there was at least one dose in each and that the nine envelopes of the material would be a commercial quantity which the defendant was intending to sell rather than use. Further support for this inference is afforded by the defendant's flight from the police officer and his obvious attempt to avoid arrest. This action could be reasonably inferred as consciousness of guilt as a dope peddler rather than merely as a user. There is also additional support for that conclusion in the testimony of Detective Ulrich that bicycles were commonly used by drug peddlers in plying their trade.

3. The defendant had appealed from his conviction by a District Court judge who had imposed a sentence of straight probation. On his present conviction he was sentenced to one year in a house of correction, six months of which were to be served and with probation for the remaining six months. The judge made clear in the course of his discussion with counsel concerning the sentence to be imposed that the sentence which was given in the first trial was too light considering the seriousness of the offense. The judge stated that he could not understand why the judge in the first trial "just gave him probation." There is no indication whatever that the judge was imposing any extra punishment in retaliation for the defendant's having appealed. Thus the bases for the sentencing strictures called for in *North Carolina* v. *Pearce*, 395 U.S. 711 (1969), and *Blackledge* v. *Perry*, 417 U.S. 21 (1974), are not present in this

case, and the strictures in those cases accordingly do not apply. The principles and rationale of *Colten* v. *Kentucky*, 407 U.S. 104, 112-120 (1972), are applicable here. There was no violation of the defendant's due process rights by reason of the sentence imposed by the judge.

*Judgment affirmed.*

PERRETTA, J. (dissenting). The majority view this case as closer to *Commonwealth* v. *Blatz*, 9 Mass. App. Ct. 603 (1980), than to *Commonwealth* v. *Bacon*, 381 Mass. 642 (1980), and conclude that the circumstances were sufficiently suspicious to justify the officer's actions. *Commonwealth* v. *Silva*, 366 Mass. 402, 405-408 (1974). *Commonwealth* v. *Almeida*, 373 Mass. 266, 270 (1977). I view the facts in this case as being less than those presented in *Commonwealth* v. *Ferrara*, 376 Mass. 502, 503 (1978), and *Commonwealth* v. *Bacon*, 381 Mass. at 645, for the following reasons.

Any inference to be drawn from the fact that bicyclists can transport and hide narcotics is equally applicable to motorists and pedestrians, to name but two, and of such generality that it is of no relevance or probative value in this case. At best, it justifies a universal suspicion of all bicyclists. See *Brown* v. *Texas*, 443 U.S. 47, 52 (1979) ("[T]he appellant's activity was no different from the activity of other pedestrians in that neighborhood").

That the officer's testimony can be reasonably construed to mean that bicycles are a common mode of drug transportation "in that area" does not render otherwise innocuous and unexceptional activity suspicious.[1] Compare and contrast *United States* v. *Gonzalez*, 362 F.Supp. 415, 421 (S.D. N.Y. 1973), with *United States* v. *Davis*, 458 F.2d 819 (D.C. Cir. 1972). See *Commonwealth* v. *Stinson*, 6 Mass.

---

[1] Indeed, the officer testified on cross-examination that "When he first went down, I had no idea what he had done."

App. Ct. 899 (1978). See generally 1 LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 3.6(g) (1978).

Because the defendant could not be the subject of an investigatory stop on the sole basis that he was on a bicycle, one must focus on his "unusual movement"[2] and refusal to stop. I do not see separate and distinct actions which fused to create sufficient suspicion to stop the defendant. Rather, the unusual movement was one event which signaled the beginning of the defendant's abrupt turn into traffic to ride down St. John Street. Even accepting the defendant's movements as flight, to conclude that it combined with several other factors to give rise to adequate suspicion to stop him is wrong. The only pre-flight conduct of the defendant regarded as suspicious by the officer was the fact that he was on a bicycle. I do not see this as an "articulable fact" within the meaning of *Terry* v. *Ohio,* 392 U.S. 1, 21 (1968). Thus, I would hold that the only factor before us is the defendant's flight, which when considered alone, as it must be, is insufficient. Compare *Sibron* v. *New York,* 392 U.S. 40, 66-67 (1968); *Commonwealth* v. *Battle,* 365 Mass. 472, 476 (1974); *Commonwealth* v. *Ortiz,* 376 Mass. 349, 354-355 (1978).[3]

Even were I able to agree with the majority that there was justification for stopping the defendant and the scope of the inquiry made of him (see note 3, *supra*), I would nonetheless disagree with their conclusion that the evidence was sufficient to prove beyond a reasonable doubt that the defendant possessed PCP with the intent to distribute it. The facts relied upon by the majority in reaching their con-

---

[2] Neither the officer's labeling nor his description of that movement warrant, in my opinion, a conclusion that the gesture was furtive. *Commonwealth* v. *Concepcion,* 10 Mass. App. Ct. 613, 616 (1980), and authorities collected in n.2.

[3] Even assuming a stop was justified, I would still conclude that the envelopes and their contents should have been suppressed on the basis that the officer's actions exceeded permissible limits. See *Commonwealth* v. *Ferrara,* 376 Mass. at 505.

clusion — nine envelopes containing an unknown total quantity of PCP, flight, and the defendant's use of a bicycle — when considered either separately or as a whole, are, at best, as equally consistent with intended personal use as they are with the proposition of intended distribution. *Commonwealth* v. *Croft*, 345 Mass. 143, 145 (1962). *Commonwealth* v. *Ellis*, 356 Mass. 574, 579 (1970). *Commonwealth* v. *Eramo*, 377 Mass. 942 (1979). Compare *Commonwealth* v. *Rivera*, 6 Mass. App. Ct. 947 (1978).