Cowin, J.
The defendants, Richard Beleño and Alan B. Dion, have each been charged with trafficking in a Class B controlled substance, cocaine, in an amount of 28 grams or more. Each defendant has filed a motion to suppress the cocaine involved on the basis that said cocaine was found during a wrongful search of an automobile. The defendants claim that the search was made without probable cause and without a warrant.[1]
A hearing was held on April 18, 19 and 24, 1996, at which State Police Trooper Mark Blanchard testified for the Commonwealth and Defendant Alan Dion testified for himself. After a hearing and evaluation of the evidence presented, including the credibility of the witnesses, I make the following findings and rulings.[2]
FINDINGS OF FACT
On April 25, 1995, State Police Trooper Mark Blanchard was on routine patrol on Route 1 Southbound in Peabody. At that time Trooper Blanchard had been a Massachusetts State Police Trooper for about two-and-one-half years. He had attended the State Police Academy and had taken a one-day course given by the Drug Enforcement Administration regarding drug investigations and a 40-hour course provided by the Department of Transportation on drug investigations. He also had taken advanced courses on different subjects given by the State Police Academy. During his time on the State Police, Trooper Blanchard had been involved in the arrest of ten persons for cocaine-related offenses and had also assisted in the arrest of another ten people on'cocaine charges. He had been present at more than fifty narcotics investigations. During the narcotics arrests in which he had been involved, Trooper Blanchard had observed cocaine several times. He was familiar with the typical manner of packaging cocaine, i.e., that it is usually contained in a small plastic bag.
On the day in question, at approximately noon, Trooper Blanchard observed a white Oldsmobile, clean and in good condition, “jet” out the exit of the Burger King parking lot on Route 1 in Peabody. Traffic was medium to light and the white Oldsmobile came out in front of other cars so quickly that it caused the other cars to brake “heavily.” Upon making this observation of the operation of the white Oldsmobile, the trooper began to follow the car. As he did so, he saw that there appeared to be two occupants in the car. He could not, however, identify any of the characteristics of the occupants at this point.
■ The white Oldsmobile proceeded onto the access road (or ramp) heading toward Route 128. The speed limit posted on the access road (or ramp) was 30 miles per hour. The trooper “clocked” and estimated the speed of the white Oldsmobile to be 50 miles per hour on the ramp for about one-eighth of a mile. The trooper continued behind the white Oldsmobile as it proceeded from the ramp onto Route 128. The Oldsmobile did not signal when it entered the ramp or when it proceeded onto Route 128. At the first reasonably safe opportunity to do so, Trooper Blanchard signalled the car to pull over and stop, and the white Oldsmobile did so. It stopped in the breakdown lane, but in the far left segment of it, so that the driver’s side of the car was on the white line between the travel lane and the breakdown lane.
When the two vehicles were stopped, the trooper observed that there were two occupants in the Oldsmobile. He saw them scrambling “frantically” in the front seat of the car, glancing back at him and the cruiser and also looking toward the traffic lane of the highway.
The trooper approached the Oldsmobile from the passenger side, contrary to his normal practice of approaching on the driver’s side. He approached the passenger’s side door for two reasons. First, the car was in the far left portion of the breakdown lane. Approaching it on the driver’s side would have put the trooper out in the lane of traffic on Route 128 in a dangerous position. In addition, the trooper approached from the passenger’s side because he had observed the two occupants of the car looking toward the driver’s side window, as if they expected him to approach from that side. Coming to the car from the passenger side would thus permit the trooper to approach more safely.
As the trooper approached the passenger side, he saw the individual in the passenger seat, identified as the defendant Dion, attempting to conceal something in the glove compartment. When he was about three feet from the Oldsmobile, the trooper saw Dion holding a clear plastic bag containing a white powder. The *370 object was approximately snowball-size. Based upon his training and experience, the trooper believed that the white powder was probably cocaine.
Trooper Blanchard asked Mr. Dion to exit the automobile. When Mr. Dion did so, the trooper conducted a pat-down search of him for the trooper’s safety. At that point, Mr. Dion was by the passenger side door. The trooper asked him to go to the front of the motor vehicle and to stay there.
The trooper then opened the unlocked glove compartment. Inside said compartment he found the clear plastic bag containing a white powdery substance, consistent with cocaine.
The other occupant of the vehicle, the driver, later identified as the defendant Richard Beleño, had stayed seated in the car during this time. After the trooper found the package in the glove compartment, he arrested both defendants and advised them of their Miranda rights.
DISCUSSION
The above findings of fact are based upon the testimony of Trooper Blanchard. Thus, it is clear that I have credited his testimony and have not found credible the testimony of Dion.
Trooper Blanchard had a valid basis for stopping the automobile (see G.L.c. 90, §§17 and 14 and 720 Code Mass. Regs. §9.06(9)). He had observed the car both speeding and failing to use care in starting. When the police observe a traffic violation, they are warranted in stopping the vehicle. Commonwealth v. Santana, 420 Mass. 205, 207, (1995), quoting from Commonwealth v. Bacon, 381 Mass. 642, 644 (1980).
As he approached the car, the trooper saw the passenger, Dion, holding and putting in the glove compartment what appeared to be cocaine in a clear plastic bag. The substance observed by the trooper could have been, as the defense argued, laundry detergent, salt, sugar, dusting powder or possibly other substances; however, based on the officer’s experience and common sense, white powdery substances packaged in a clear plastic bag in an automobile provide reason to believe that they contain cocaine, particularly when an occupant of the car is quickly moving to put that baggie into the glove compartment. If the item had been laundry detergent, salt, sugar, dusting powder or any other innocent item, there would have been no reason to attempt to secret that item upon the approach of a police officer. The trooper was also aware that cocaine is normally packaged in clear, small plastic bags. It is not consistent with experience to find people carrying laundry detergent, salt, sugar or dusting powder in small plastic bags. The observation of the white powder in a clear plastic bag being pushed quickly into the glove compartment gave the trooper probable cause to search the glove compartment for contraband. Commonwealth v. Jiminez, 22 Mass.App.Ct. 286 (1986).
The defense argues that the substance must have been in a hard rock formation to fit in the small baggie. The trooper’s brief view of the substance would explain why it appeared to be a white powder substance. In any event, part of it could have been in one form and part of it in another.[3]
The defendant Dion, who does not and never did have a driver’s license, testified that the Oldsmobile pulled out into the traffic properly and never speeded. Given the defendant’s scenario, Trooper Blanchard would have had no reason to follow the Oldsmobile. The car was in good condition and the trooper could not discern any identifying features about the occupants when he began following the car. Thus, there was nothing about the car or its occupants to attract the attention of a police officer.
Further, according to the defendant’s testimony, Dion only opened the glove compartment to obtain the car registration and he did so before the trooper approached. Yet, the trooper immediately opened the glove compartment after having Dion exit the car and conducting a pat-search of Dion. Again, the defendant’s version makes no sense. The trooper would have had to be clairvoyant to know there was contraband in the glove compartment. The glove compartment can hardly be considered a good place to hide contraband.
It was not necessary to obtain a warrant to search the automobile in this case because of the mobility of the automobile and the fact that two suspects were involved. The so-called “automobile exception” to the warrant requirement applies. The “automobile exception” exists when police have probable cause to believe that an automobile contains contraband or evidence of a crime and they are faced with exigent circumstances, making obtaining a warrant impracticable. Such factors existed in this case. Commonwealth v. Alvarado, 420 Mass. 542, 554 (1995) and cases cited.
ORDER
For the foregoing reasons, the defendants’ motions to suppress are DENIED.

There is no question that the search was a warrantless one. Hence, the only issue is whether probable cause existed for the search.

Immediately following the hearing, the Court dictated Findings, Rulings and an Order from the bench indicating that a written decision with non-substantive revisions and citations added would be issued subsequently.

By the time of the motion hearing, the substance was partly in hard rock form and partly in powdery form. This was, of course, after chemical analysis had been performed.