Connolly, J.
Defendant, Dario Valdez (“Valdez”), has been charged with trafficking in cocaine in violation of G.L.c. 94C, §32E(b)(3) and conspiracy to traffic in cocaine in violation of G.L.c. 94C, §40. Defendant has now moved to suppress evidence seized from his co-defendant. As grounds thereof, defendant claims that such evidence was seized pursuant to an illegal warrantless search. Specifically, defendant wishes to suppress the following items from evidence: (1) cocaine; (2) one beeper; (3) $190.00 in United States currency; and (4) one blue and white jacket.
For the reasons stated below, defendant’s motion to suppress is DENIED.
FINDINGS OF FACT
In the month of April 1998, Special Agents from the Drug Enforcement Administration (the “DEA”) began conducting an investigation involving the defendant. The investigation was handled by a special unit at the DEA referred to as Task Force 9 (the “Task Force”). The Task Force was supervised by Agent Michael Cunniff (“Agent Cunniff’). The case agent on the Task Force was Agent Calvin Kantor (“Agent Kantor”).[1]
On April 15, 1998, the DEA Task Force set up a controlled drug buy between DEA informant, Walter Colon (“Colon”), and Valdez in Boston, Massachusetts. At this controlled buy Colon purchased 125 grams of cocaine from Valdez.[2] Thereafter, another controlled buy between Valdez and Colon was arranged for April 24, 1998, however, this controlled buy did not come to realization.
At approximately 2:00 in the afternoon of April 28, 1998, Agent Kantor and Agent Edgar Sarabia (“Agent Sarabia”) met with Colon at the DEA New England Field Office, Boston, Massachusetts. Colon, through the instruction of the Agents, called Valdez via telephone. Thereafter, Colon negotiated to purchase 125 grams of cocaine from Valdez. Valdez and Colon agreed to meet at McDonald’s Restaurant (“McDonald’s”), located at 463 Massachusetts Avenue, Cambridge, Massachusetts,[3] in order to execute the drug transaction. The telephone conversation between Valdez and Colon was monitored and recorded by the Task Force.
At approximately 2:30 that afternoon, in accordance with its normal practice and procedures, the DEA Task Force contacted the Cambridge Police Department and advised them of the impending drug transaction. Thereafter, the Cambridge Police Department assisted the Task Force in setting up surveillance in and around McDonald’s.
With Colon’s consent, the DEA supplied Colon with a recorder and transmitting device and concealed it under his clothing. Valdez arrived at McDonald’s in a white Toyota Camry at approximately 3:45 p.m. that afternoon. Colon drove to McDonald’s and met Valdez inside of the establishment. While inside McDonald’s, Colon and Valdez engaged in a conversation pertaining to the drug sale. This conversation was recorded by the Task Force utilizing the recorder and transmitting device Colon concealed on his person.
Juan Luciano (“Luciano”) was outside of McDonald’s. Colon pointed to Luciano and instructed the agents and police officers to grab him. When Detectives Grey, DeMarco and Agent Sarabia proceeded to approach McDonald’s, Luciano fled on foot. Thereafter, the officers, who were also on foot, followed Luciano.[4] The officers saw Luciano walking quickly into an alley at the rear of 54 Bishop Allen Drive. They then witnessed Luciano crouching near a trash dumpster which was adjacent to a fence; Luciano appeared to be rummaging around on the ground.
Agent Sarabia identified himself as a police officer and instructed Luciano to “stop.” Subsequently, Luciano jumped over a fence, which was located next to the trash dumpster, and ran toward Bishop Allen Drive. The foot chase continued as Officer DeMarco radioed a description of Luciano to patrol units. Luciano then ran into the Harvest Cooperative parking lot located on Essex Street. Officers Grey and DeMarco were still on foot pursuit of Luciano and patrol units were arriving on the scene with their lights and sirens blaring. At this point Luciano discarded his blue and white jacket. The officers caught up to Luciano and placed him under arrest in the parking lot. Valdez was arrested outside of McDonald’s.
One beeper, $190.00 in United States currency, and one blue and white jacket were seized from Luciano. Additionally, officers found 125 grams of cocaine underneath some newspapers in the area where Luciano was earlier observed crouching. Thereafter, Valdez was brought to the Cambridge Police station where he was fingerprinted and booked. The case was ultimately transferred to the Cambridge Police Department for prosecution.
RULINGS OF LAW
Defendant argues that certain items seized from Luciano on April 28, 1998, should be suppressed because they were seized as a result of an illegal *161 warrantless search and seizure. Defendant further argues that any “fruit” of the search, including, but not limited to, any statements allegedly made by him or his co-defendant should also be dismissed. Defendant alleges that the items were seized in the absence of a search warrant and in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the Massachusetts Declaration of Rights.
Defendant has standing to challenge the items seized from Luciano because he has been charged with trafficking in cocaine and is alleged to have possessed the cocaine that was seized from Luciano. Commonwealth v. Alvarado, 420 Mass. 542, 543, n. 2 (1995) (defendant has automatic standing to challenge the seizure of cocaine from third party if charged with the constructive possession of the cocaine seized from such person).
Defendant was charged with trafficking in cocaine in violation of G.L.c. 94C, §32E(b) and conspiracy to traffic in cocaine in violation of G.L.c. 94C, §40.[5] Therefore, since the Commonwealth alleges that the defendant possessed the cocaine seized from Luciano with the intent to distribute or dispense it, possession is an essential element of the trafficking charge brought against Valdez. Thus, Valdez has standing to challenge the stop and seizure of Luciano.
I. Investigatory Stop
Defendant argues that the warrantless search of Luciano was illegal. Specifically, defendant argues that the investigatory stop of Luciano was improper because there was no reasonable grounds for inferring that he was involved in the commission of a crime.
It is questionable that the act of the officers following Luciano when they observed him walking quickly was a pursuit. See Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981) (a stop starts when pursuit begins). In Commonwealth v. Williams, 422 Mass. 111 (1996), the Supreme Judicial Court found that “(w]hen the police first spotted the defendant running and decided to follow in their cruiser, they were merely observing rather than pursuing the defendant.” Williams, 422 Mass. at 116. Likewise, the police were merely commencing surveillance upon first encountering Luciano, not pursuing him. They were not running after him and they did not instruct Luciano to stop.
However, assuming arguendo, that the act of following Luciano constituted a stop, this Court finds that the law enforcement officials were justified in stopping Luciano to conduct a threshold inquiry. A police officer is warranted in making a threshold inquiry “where suspicious conduct gives the officer reason to suspect that a person has committed, is committing, or is about to commit a crime.” Commonwealth v. Bacon, 381 Mass. 642, 643 (1980), quoting Commonwealth v. Silva, 366 Mass. 402, 405 (1974). That action mustbe “based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer’s experience.” Bacon, 381 Mass. at 643-44, quoting Silva, 366 Mass. at 406.
Defendant is correct in his assertion that a police officer may not make a stop based upon a mere hunch, however, what we have here is more than a hunch. See Bacon, 381 Mass. at 643-44. Under the totality of the circumstances, there was reason to believe that Luciano has committed, is committing, or is about to commit a crime. Specifically, there was reason to believe that Luciano may have been a look-out for Valdez during the controlled drug buy.
A controlled drug deal was in the process of taking place inside of McDonald’s; the informant[6] pointed to Luciano and instructed the officers to grab him; and Luciano began to walk away quickly as soon as the officers began to follow him. It was only after all of these facts occurred that the police began to follow Luciano via foot. Accordingly, there was reasonable suspicion to believe that Luciano committed, is committing, or is about to commit a crime.
II. Search
Defendant contends that the cocaine found next to the dumpster in the rear of 54 Bishop Allen Drive cannot be justified under the doctrine of inevitable discovery using the standards in Article 14. See Commonwealth v. O’Connor, 406 Mass. 112 (1989). Defendant argues that because the initial stop of Luciano was unjustified, and control of the cocaine was relinquished only after the stop and seizure, the drugs must be suppressed.
However, as discussed earlier, the initial stop of Luciano was reasonable. Therefore, the cocaine is admissible. Even if the initial stop of Luciano was not reasonable, the cocaine is nonetheless admissible because the defendant has not established a reasonable expectation of privacy in the area searched. Commonwealth v. Montanez, 410 Mass. 290, 301 (1992). The measure of the defendant’s expectation of privacy is (1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize that expectation as reasonable. Montanez, 410 Mass. at 301, citing Commonwealth v. Mamacos, 409 Mass. 835, 638 (1991). Defendant has failed to show that he had a reasonable expectation of privacy in the alleyway where the 125 grams of cocaine was recovered.
Additionally, the act by Luciano of placing the cocaine underneath a dumpster located in an alleyway was an act of abandonment. Abandonment occurs when a person has “voluntarily given up all control over the [property].” Commonwealth v. Ferguson, 410 Mass. 611, 615 (1991), citing Commonwealth v. Battle, 365 Mass. 472, 475 (1974). Therefore, since Luciano voluntarily gave up control over the cocaine, the police officers did not illegally seize it when they picked it up after it had already been abandoned. Furthermore, it is not relevant that the abandonment was induced by an individual’s fear of *162 apprehension by police officers. See Commonwealth v. Lanigan, 12 Mass.App.Ct. 913, 914 (1981).
Accordingly, since there was no reasonable expectation of privacy in the area where the drugs were found and the cocaine was, nonetheless, abandoned before a seizure occurred, defendant’s motion to suppress must fail.
ORDER
For the foregoing reasons, the defendant’s motion to suppress is hereby DENIED.

 Agent Kantor is a Cambridge Police Officer who, at the time, was assigned to the DEA. Agent Kantor has been sworn and deputized as a federal agent. The Cambridge Police Department received federal funding for Agent Kantor’s participation in the Task Force. The DEA recruits local police officers as agents in order to give new agents the opportunity of working with “street-wise” law enforcement officers.

The money used to purchase the cocaine was supplied by the DEA. Additionally, all surveillance equipment was the property of the DEA.

This area is known as Central Square.

The officers were not chasing Luciano at this point.

Defendant is only arguing automatic standing as it relates to the trafficking in cocaine charge.

There is no reason for this Court to doubt the reliability of this informant. By this point, he had already engaged in one controlled buy of cocaine from defendant.