COMMONWEALTH *vs.* JOHN H. BATTLE.

Suffolk.    April 2, 1974. — June 12, 1974.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*"Threshold" Police Inquiry.    Arrest.    Search and Seizure.    Probable Cause.*

Testimony by an experienced narcotics officer that while patrolling in a marked police vehicle he observed an individual handing folded green bills to the defendant, that on spotting the oncoming vehicle the two men darted into the outer hallway of a building, that the officer observed the defendant "throw something" down there which the officer retrieved and recognized as heroin packages and heroin, warranted findings that the officer then had probable cause to arrest the defendant, and that the arrest, the seizures then of the heroin and later of other items on a search of his person at a police station, were lawful. [473-476]

INDICTMENTS found and returned in the Superior Court on November 20, 1972.

The cases were tried before *McGuire*, J.

*Malvine Nathanson* for the defendant.

*Richard E. Rafferty*, Assistant District Attorney, for the Commonwealth.

TAURO, C.J.    John H. Battle was found guilty and sentenced for possession of heroin with intent to distribute, and possession of barbituric acid and a derivative of barbituric acid (drugs) with intent to distribute. His convictions were affirmed by the Appeals Court. *Commonwealth* v. *Battle,*      Mass. App. Ct.      (1973).[a] We granted further appellate review. We affirm the convictions.

In this appeal made pursuant to G. L. c. 278, §§ 33A-33G, the defendant contends that the trial judge erred in admitting in evidence the drugs and $161 in currency. The key issue is the legality of the police seizure of the heroin. The barbituric acid, the derivative of barbituric acid, and the money were discovered by the police at the station house pursuant to a search of the defendant incident to his initial arrest for the possession of heroin. It is clear that if the heroin was properly seized, the police had the right to arrest the defendant, and thus were entitled to search his person at the police station for any additional evidence of illegal activity. Conversely, if the heroin was unlawfully obtained, the arrest was invalid, and the other evidence would be a link in an unconstitutional chain of events which would have required all the evidence to be excluded. For reasons to be discussed, we believe the police conduct in this case was proper in all respects, and that therefore the trial judge was correct in ruling that the evidence was admissable.

From the evidence before him the trial judge could have found the following facts.[1] At approximately 8 P.M. on

---

[a] 304 N. E. 2d 202.

[1] The manner in which the defendant sought to have the evidence excluded makes this case somewhat more complicated than it should be. No pre-trial motion to suppress was made. Instead, after completion of the arresting officer's testimony at trial, the defendant made an oral motion to strike that testimony "relative to the seizure of the evidence [and] the arrest of the defendant . . .

August 3, 1972, William H. Kenefick, Jr., a uniformed
Boston policeman of nearly four years experience and a
veteran of approximately 200 narcotics arrests, was rou-
tinely patrolling the Grove Hall section of Blue Hill Avenue
in a marked police vehicle in search of drug traffic. He was
accompanied by two other uniformed officers. The weather
and light conditions combined to create good visibility.
Proceeding at three to four miles an hour along the curb on
the right hand side of the street, the officers observed two
black males standing fifteen feet away on the top step of the
stoop in front of a glass foyer leading into 503 Blue Hill
Avenue. The individual later identified as the defendant
was standing with his back to the street (and thus with his
side facing the oncoming officers), and was, in Officer
Kenefick's words, "well-dressed." The other individual,
standing so as to be facing the officers, was dressed in a T-
shirt and dungarees, and appeared to be handing folded
green bills to the defendant. On spotting the oncoming
police cruiser, the two men darted into the outer hallway of
503 Blue Hill Avenue.[2] The police immediately stopped the
car, got out, and pursued them. Officer Kenefick testified

[because] I don't believe he [the arresting officer] had any probable cause to . . .
make an arrest and seize the evidence." The judge, apparently willing to rule on
the merits of this argument instead of rejecting it for failure to be in writing (see
Rule 101B of the Superior Court [1954], as amended), denied the motion after
allowing the defendant to make a brief argument. The judge did not specify which
portions of the arresting officer's testimony he found to be true, even though it was
at least facially inconsistent in some respects, nor did he state the legal basis for
his ruling — he simply denied the motion. In the absence of specific findings, we
may assume that the judge found to be true those facts which support his legal
conclusion.

[2] While the defendant admits that he and the other person ran into the building,
he argues that they did not do so until the police had first gotten out of their
vehicle and began running toward them. Certain portions of Officer Kenefick's
testimony can be read to support this version of the sequence of events, but over
all, the testimony most strongly supports the sequence described in the text. In
any event, there is no doubt that on the basis of this testimony, the trial judge
*could have found* that the defendant took flight before the police got out of their
vehicle. See fn. 1, *supra.*

For example, after Officer Kenefick stated on cross-examination that "[t]hey
darted inside," he was asked, "[W]hat do you mean by that?" His answer was
unequivocal. "They looked over; saw the cruiser creeping up, and went right in,
and we went right in behind them. It startled them." Earlier, on direct
examination, the same thought was expressed: "I observed [from the cruiser] one
fellow with what appeared to be money in his hand, and upon spotting us they
darted into the hallway."

that he observed the defendant "throw something to the ground" while approaching a second doorway leading into the building's main hallway. Seconds later, Officer Kenefick caught up to the defendant and "pinned him to the wall." He then retrieved from the floor four glassine-type bags containing white powder. On the basis of his experience, he recognized the bags as the type usually used to package heroin, and that the white powder was similar in appearance to heroin. The defendant was placed under arrest. The white powder was subsequently determined to be heroin.

The defendant was taken to the station house in the police cruiser, and informed of his rights. A search of his person revealed four pills, later determined to be "amphetamines," and $161 in currency.

The defendant contends that all of this evidence was the fruit of illegal police conduct. We disagree. On seeing two persons run into an apartment building in apparent response to an approaching police vehicle, the police had the right — if not the duty — to conduct further visual investigation while the two persons remained in public view.[3] Such police conduct is not a search or seizure, however expansively one wishes to interpret those terms, and therefore a lack of probable cause to arrest or even ground to conduct a "stop and frisk" is irrelevant. The requirements of the Fourth Amendment to the Constitution of the United States enter into the picture at a later point in this case, when the arrest was actually made. As the Appeals Court correctly noted, at fn. 7, "Kenefick's act in picking up the glassine bags did not constitute a search of the defendant within the meaning of the Fourth Amendment . . .. The defendant had voluntarily given up all control over the bags and could have no expectation of privacy with respect thereto. *Hester* v. *United States*, 265 U. S. 57, 58 (1924). *Abel* v. *United States*, 362 U. S. 217,

---

[3] The defendant had no right of privacy in the hallway. *Commonwealth* v. *Thomas*, 358 Mass. 771, 773-775 (1971).

240-241 (1960). *Commonwealth* v. *Lewis*, 346 Mass. 373, 381-382 (1963), cert. den. sub nom. *Lewis* v. *Massachusetts,* 376 U. S. 933 (1964). *United States* v. *Edwards,* 441 F. 2d 749, 751-753 (5th Cir. 1971)." Thus, the narrow issue before us is clear: did the police have probable cause to arrest the defendant after observing his flight and hurried abandonment of something which in appearance and packaging resembled heroin? While flight alone is certainly not sufficient ground to arrest, *Wong Sun* v. *United States*, 371 U. S. 471 (1963), it is a "strong . . . [indication] of *mens rea,*" *Sibron* v. *New York*, 392 U. S. 40, 66 (1968), and is clearly a factor on which police are entitled to rely in making the decision to arrest. When coupled with an experienced narcotics officer's opinion that the substance which he personally observed[4] the defendant discard appeared to be heroin, the two factors created compelling grounds for arrest. This arrest being lawful, the subsequent incidental search at the station house was also proper. *Commonwealth* v. *Holmes*, 344 Mass. 524, 525 (1962). *Commonwealth* v. *Lehan*, 347 Mass. 197, 206 (1964). Thus the "amphetamine" pills and the $161 were admissible in evidence. There was no error.

*Judgments of Superior Court affirmed.*

---

[4] The police were clearly entitled to detain the defendant momentarily in the hallway of the building long enough to retrieve from the floor, and briefly examine, what they had seen the defendant throw down. *Adams* v. *Williams*, 407 U. S. 143, 146 (1972).