COMMONWEALTH vs. JAVIER L. CONCEPCION.

Suffolk.   September 10, 1980. — October 20, 1980.

Present: BROWN, DREBEN, & KASS, JJ.

*Search and Seizure.*

At a criminal trial, evidence that a police officer knew that the defendant had previously been arrested for carrying a gun, that the defendant had been seen in the area of a shooting which had occurred that day, and that the defendant's license to operate a motor vehicle had been suspended and that the officer, upon observing the defendant drive through a stop sign and ordering him to the side of the road, saw the defendant lunge toward the glove compartment as the officer approached the automobile was sufficient to warrant a finding that the officer had probable cause to search the glove compartment of the automobile. [616-617]

INDICTMENTS found and returned in the Superior Court on November 4, 1975.

A motion to suppress was heard by *Brogna, J.,* and the cases were tried before *Garrity, J.*

*Milly Whatley* for the defendant.

*William R. Wilson,* Legal Assistant to the District Attorney (*Charles M. Campo,* Assistant District Attorney, with him) for the Commonwealth.

DREBEN, J.  The defendant appeals his convictions on indictments charging him with receiving stolen property (a revolver) and with unlawfully carrying firearms in a motor vehicle.  The guns in issue were found in the glove compartment of the defendant's car pursuant to a warrantless search of the car made at a police station after the car had been seized by the police.  The only issue on this appeal is whether the motion judge correctly denied the defendant's motion to suppress the guns by ruling that the police had probable cause to make the warrantless search.  We uphold the ruling of the motion judge and affirm the convictions.

"We turn . . . to the facts as found by the judge, with some additional detail drawn from the testimony at the suppression hearing and trial." *Commonwealth* v. *Best,* 381 Mass. 472, 492 (1980). At about 7:40 P.M. on May 21, 1975, John Phillips, a police officer with fourteen years' experience, observed the defendant driving alone in a red 1975 Pontiac automobile. Phillips knew the defendant and had previously arrested him for carrying a gun. Earlier in the day, Phillips had been informed by his police commander that there had been a shooting that day and that the defendant had been seen in the area of the shooting. About a week before, Phillips had been informed by another police officer that the defendant's license to operate a motor vehicle had been suspended.

Phillips, who was on patrol with another officer in a marked police cruiser, saw the defendant drive through a stop sign, followed him, and ordered him to the side of the road. Phillips, in uniform, approached the defendant with his gun drawn. While he was between the rear end and the driver's door of the defendant's car, he saw the defendant lunge toward the glove compartment.[1] Phillips and his partner took the defendant out of the car and patted him down. No weapon was found as a result of the patdown. The defendant produced and gave to the police his license and registration.

A crowd of approximately twenty persons gathered around the cars and was acting in a "rather hostile manner". Phillips knew the defendant had relatives living in the area. He took the keys from the ignition of the defendant's car, gave them to a special police officer, and told him to stay with the car to make sure that no one tampered with it or tried to take it away. Phillips then drove the defendant to the police station, where the defend-

---

[1] The judge in his findings on the motion to suppress states that the lunging motion was observed by Phillips while in the police car, but all of the testimony indicates that the lunge was observed by Phillips after he had alighted from the police car and while he was approaching the defendant in his car.

ant was booked for going through a stop sign and operating a motor vehicle after his license had been suspended. Prior to his being booked, the defendant had been arrested, but the record is not clear as to when the arrest occurred.

By the time Phillips returned to the defendant's car, the crowd had doubled. He drove the car to the police station, where he opened the glove compartment, which was unlocked, and found two guns, one loaded and one which had its serial number removed. Phillips testified at the suppression hearing that prior to the search he believed that the glove compartment contained a gun.

"Since the search of the defendant's automobile was conducted without a warrant, the burden was on the Commonwealth to show that it was reasonable under the Fourth Amendment to the United States Constitution." *Commonwealth* v. *Moon*, 380 Mass. 751, 759-760 (1980). *Commonwealth* v. *Barnes*, 2 Mass. App. Ct. 357, 359 (1974).

The defendant claims that there was no probable cause for the search. He concedes that the stop and arrest of the defendant for traffic offenses were lawful. He also concedes that there were exigent circumstances, so that, if the police had had probable cause, there would have been no need for a warrant to search the automobile. *Chambers* v. *Maroney*, 399 U.S. 42, 51 (1970). The Commonwealth properly concedes that the search was not incident to an arrest, *Preston* v. *United States*, 376 U.S. 364, 367 (1964), nor within the rule of *Terry* v. *Ohio*, 392 U.S. 1 (1968). Thus, the only issue is whether there was probable cause for the search. The right to search and the validity of the seizure are "dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law", *Carroll* v. *United States*, 267 U.S. 132, 158-159 (1925), or, as otherwise put in *Dyke* v. *Taylor Implement Co.*, 391 U.S. 216, 221 (1968), "the officers conducting the search" must "have 'reasonable or probable cause' to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." On that issue, where the search is warrantless,

the Commonwealth, as indicated earlier, has the burden of proof. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974). *Commonwealth* v. *Ortiz,* 376 Mass. 349, 353 (1978).

We agree with the judge that the Commonwealth met its burden of showing that Phillips had probable cause to believe the defendant was unlawfully carrying a firearm in the glove compartment of his car. See G. L. c. 269, § 10(*a*). See *Commonwealth* v. *Lee, ante* 518, 525-526 (1980). There are several factors which, when combined, lead us to this conclusion. No factor need be considered alone. *Commonwealth* v. *Stewart,* 358 Mass. 747 751 (1971). Phillips, when approaching the defendant with his gun drawn, saw the defendant lunge toward the glove compartment. The lunge, taken together with the other circumstances known to Phillips, which "need not be evidence which would be admissible on the issue of guilt at the defendant's trial", *Commonwealth* v. *Ortiz,* 376 Mass. at 354, presented sufficient grounds for a finding of probable cause.[2] See *id.;* *Commonwealth* v. *Battle,* 365 Mass. 472, 476 (1974); *Commonwealth* v. *Dupont,* 2 Mass. App. Ct. 566, 570 (1974). The other circumstances are that at the time the defendant made the lunge to the glove compartment he was being approached by a uniformed policeman with a gun drawn, that the lunge was not for purposes of obtaining a registra-

---

[2] A lunge or other furtive gesture is usually insufficient, by itself, to render a search reasonable. See *Commonwealth* v. *Almeida,* 373 Mass. 266, 269-270 (1977); *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974); *Commonwealth* v. *Harris,* 3 Mass. App. Ct. 343, 345 (1975). See also *People* v. *Superior Court,* 3 Cal. 3d 807, 817-819 (1972). See generally 1 LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 3.6(d) (1978); Search and Seizure, Furtive Movement or Gesture as Justifying Police Search, 45 A.L.R.3d 581 (1972). Such a movement, however, is relevant in determining whether there is probable cause. It is also relevant to justify a protective search for weapons under the principles of *Terry* v. *Ohio,* 392 U.S. 1 (1968). See *Commonwealth* v. *Hawkes,* 362 Mass. 786, 789 (1973); *Commonwealth* v. *Almeida,* 373 Mass. 266, 272 (1977). Compare *Commonwealth* v. *Bacon,* 381 Mass. 642, 646 (1980).

tion,[3] that Phillips had previously arrested the defendant on a gun charge, and that Phillips had been informed by his commanding officer that there had been a shooting earlier that day and that the defendant had been seen in the area of the shooting. We conclude that Phillips' belief that the defendant was unlawfully carrying a gun in the glove compartment of his car was reasonable, and that there was the requisite "nexus between the item to be seized and the criminal behavior" of the defendant. *Warden, Md. Penitentiary* v. *Hayden*, 387 U.S. 294, 307 (1967). See *Commonwealth* v. *Ortiz*, 376 Mass. at 356 n.6; *Commonwealth* v. *Lee, supra* at 528. Compare *Commonwealth* v. *Moon*, 380 Mass. at 760, where "there was no 'nexus' between the car and the criminal activity of the person sought." The motion judge was, therefore, correct in ruling that Phillips had probable cause to search the glove compartment.

There were clearly exigent circumstances which justified the police in taking the car to the police station. We need not consider whether the circumstances justifying the lack of a warrant were still in effect at the time of the search at the police station, as the defendant does not argue that point and conceded at oral argument that that issue was foreclosed by *Chambers* v. *Maroney*, 399 U.S. at 52. *Commonwealth* v. *Rand*, 363 Mass. 554, 558-561 (1973). But see *State* v. *Benoit*,    R.I.    ,    (1980).[a] The order denying the motion to suppress and the judgments are affirmed.

*So ordered.*

---

[3] At the time of the search, the defendant had already produced his registration and license and had not obtained them from the glove compartment. There was no indication that he had them in his hand, and it may be inferred that the documents were not obtained as a result of the lunge.

[a] 417 A.2d 895, 901 (R.I. 1980).