· COMMONWEALTH *vs.* MIGUEL PENA.

No. 88-P-200.

Suffolk. December 12, 1990..- August 8, 1991.

Present: SMITH, FINE, & PORADA, JJ.

*Constitutional Law*, Assistance of counsel, Search and seizure, Probable
   cause. *Probable Cause. Threshold Police Inquiry. Search and Seizure*,
   Threshold police inquiry, Probable cause.

In a criminal case in which defense counsel's failure to file a motion to
   suppress a plastic bag containing cocaine constituted conduct that fell
   "measurably below that which might be expected from an ordinary fal-
   lible lawyer," but where the factual record of the case failed to disclose
   whether there was a reasonable possibility such a motion would have
   been allowed, the case was remanded for an evidentiary hearing on a
   motion to suppress that evidence. [204-205, 206-207]

INDICTMENT found and returned in the Superior Court De-
partment on January 16, 1986.

The case was heard by *Walter E. Steele*, J., and a motion
for a new trial was also heard by him.

*Nona E. Walker*, Committee for Public Counsel Services,
for the defendant.

*Annemarie Relyea-Chew*, Assistant District Attorney, for
the Commonwealth.

SMITH, J. The defendant was tried by a Superior Court
judge, sitting without a jury, on an indictment charging him
with trafficking in cocaine in an amount in excess of 200
grams. G. L. c. 94C, § 32E(*b*). He was convicted of so much
of the indictment that charged him with trafficking in co-
caine in an amount more than 100 grams but less than 200
grams. After his conviction, the defendant (represented by
new counsel) filed a motion for a new trial on the ground
that he was denied his right to effective assistance of counsel
as guaranteed by the Sixth Amendment to the United States

Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution.[1] The defendant claimed that trial counsel was ineffective because he did not file a suppression motion. The judge denied the new trial motion based on the evidence introduced at trial. The defendant claims that the denial constituted error.[2]

We summarize the evidence presented at trial. On June 24, 1985, as a result of receiving information from a "reliable" informant, six members of the Boston police department drug control unit proceeded to an address on Montebello Road in Jamaica Plain in three unmarked vehicles. The officers were in plain clothes and included Detective Joseph Driscoll and the supervising officer, Sergeant Detective Gil Griffiths, two highly experienced narcotics investigators. Driscoll parked his vehicle directly across the street from the address. Griffiths and the other officers parked their vehicles behind Driscoll.

About ten or fifteen minutes after the police had arrived, an automobile appeared and parked near the house under surveillance. A man got out of the automobile and walked down the driveway to the rear of the house and entered it. The police then drove their automobiles behind the parked car. About ten minutes later, the same man came from the rear of the house and walked up the driveway toward the street. The defendant was behind him. The two men were about three-quarters of the way up the driveway when Driscoll moved his unmarked cruiser "up right into the . . . driveway" and got out of the vehicle.

When Driscoll left his automobile, Griffiths moved his vehicle into the middle of Montebello Road and "bailed out" of his automobile. Driscoll walked toward the two approaching

---

[1] It has been held that the right to effective assistance of counsel afforded a defendant by art. 12 "provide[s] greater safeguards than the Bill of Rights of the United States Constitution." *Commonwealth* v. *Hodge*, 386 Mass. 165, 169 (1982). Therefore, if the Massachusetts standard for ineffective assistance of counsel is met, "the Federal test is necessarily met as well." *Commonwealth* v. *Fuller*, 394 Mass. 251, 256 n.3 (1985).

[2] Although the defendant also appealed from the conviction, his brief argues only error in the denial of the motion for a new trial.

men. He did not display any weapons or badges or otherwise identify himself as a police officer. Upon making eye contact with Driscoll, the defendant turned and started running toward the back of the house. Driscoll and the other police officers pursued him. Driscoll observed a plastic bag of white powder in the defendant's right hand.[3] The defendant ran into the basement of the house. Driscoll, with the other officers right behind him, ran into the basement after the defendant. Driscoll observed the defendant throw the plastic bag over a wooden wall in the basement. The defendant was stopped and the plastic bag was retrieved. It was found to contain 112.47 grams of cocaine. On a table in the basement the police discovered other bags of cocaine and drug paraphernalia, including a scale, baggies, and a strainer.

On cross-examination, Driscoll testified that, prior to the date of the arrest, he had never been to the address under surveillance, had no information as to any drug activity at the house, did not have sufficient information on the date in question to obtain a search warrant for the house, and had not been given any names by his informant.

At the conclusion of the trial, the judge stated that he was not convinced "beyond a reasonable doubt" that the cocaine and drug paraphernalia found on the table in the basement were connected to the defendant. However, he found the defendant guilty of trafficking in cocaine in the amount of

---

[3]In regard to when he saw the defendant carrying the plastic bag, Driscoll testified on direct examination that during the course of his pursuit of the defendant, he "was right behind [the defendant], and in his right hand I seen a plastic bag containing white powder."

On cross-examination, Driscoll testified that he first saw the plastic bag in the defendant's hand when the defendant was walking up the driveway.

In his memorandum of decision denying the defendant's motion for a new trial, the judge found that, "[u]pon making eye contact with . . . Driscoll, [the defendant] turned and started running to the back of the house. Driscoll pursued him and, as he did so, saw a plastic bag of white powder in the defendant's right hand."

In our recounting of the facts, we use the judge's findings as to when Driscoll first saw the plastic bag. We note that Driscoll never testified that, when he saw the plastic bag, he formed the opinion, from his experience, that the white powder in the bag appeared to be a narcotic drug.

112.47 grams, the amount of cocaine found in the plastic bag.

When a defendant raises an issue of ineffective assistance of counsel, we engage in a two-step inquiry. First, we "must examine the circumstances of the case to discover whether there has been 'serious incompetency, inefficiency, or inattention of counsel — behavior . . . falling measurably below that which might be expected from an ordinary fallible lawyer.' " *Commonwealth* v. *Lanoue*, 409 Mass. 1, 4 (1990), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Second, "if incompetency is found, [we] must then determine whether it has deprived the defendant of an 'otherwise available, substantial ground of defence.' " *Ibid.* Here, the defendant claimed that trial counsel's failure to move to suppress the plastic bag containing 112.07 grams of cocaine, which the defendant was alleged to have been carrying, constituted ineffective assistance of counsel, because, on the facts presented at trial, the suppression motion was meritorious. Those facts, according to the defendant, did not amount to reasonable suspicion to justify an investigatory stop, at least before the chase began. *Terry* v. *Ohio*, 392 U.S. 1, 21-22 (1968).

Both the Fourth Amendment to the United States Constitution and art. 14 of the Declaration of Rights of the Massachusetts Constitution forbid illegal searches and seizures. The failure of counsel to litigate a *viable* claim of an illegal search and seizure is a denial of the defendant's Federal and State constitutional right to the effective assistance of counsel. *Kimmelman* v. *Morrison*, 477 U.S. 365, 382-383 (1986). *Commonwealth* v. *Lykus*, 406 Mass. 135, 139-140 (1989). Here, the only basis for the defendant's conviction was a bag of cocaine which the Commonwealth claimed was in his possession at the time he fled into the basement. Based on the evidence introduced at trial, we think the constitutional claim (see note 1, *supra*) was viable and trial counsel's failure to file a motion to suppress the cocaine, therefore, constituted conduct that fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v.

*Saferian*, 366 Mass. at 96. Certainly, "[w]e can think of no 'reasonable strategic choice' which would warrant the failure to file a motion to suppress in the circumstances of this case." *Commonwealth* v. *Lykus*, 406 Mass. at 140.

Our inquiry does not stop with our finding of incompetency on the part of trial counsel. When a claim of ineffective assistance of counsel concerns an attorney's failure to raise a Fourth Amendment or an art. 14 issue, the defendant must show that the constitutional claim has merit and that there was a reasonable possibility that the verdict would have been different without the excludable evidence. *Kimmelman* v. *Morrison*, 477 U.S. at 375. *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983)(not ineffective assistance of counsel when trial counsel fails to file a suppression motion with only a minimal chance of success).

The judge, in denying the defendant's motion, ruled, citing *Commonwealth* v. *Battle*, 365 Mass. 472, 474-476 (1974), that once the defendant started to run back toward the house after he made eye contact with Driscoll, "the police had the right — if not the duty —" to conduct a further investigation. The judge further ruled that "[o]nce the defendant voluntarily gave up control of the bag, 'without any prompting or wrongdoing by the police,' the officer 'was free to retrieve it.' " He concluded that a suppression motion, if filed, would have been denied and, therefore, the defendant's trial counsel was not ineffective.

In *Battle, supra,* two uniformed police officers in a marked police vehicle observed an individual in an area known as a center of drug traffic handing folded green bills to the defendant. When the two men saw the oncoming police cruiser, they ran into the outer hallway of a building. The police pursued the men and saw the defendant throw something to the ground. After pinning the defendant to the wall, one of the police officers retrieved the discarded object from the floor. He recognized it, from his experience, as containing bags of heroin and placed the defendant under arrest. The court held that the evidence was not the fruit of illegal police conduct. It stated "[o]n seeing two persons run into an apartment

building in apparent response to an approaching police vehicle, the police had the right — if not the duty — *to conduct further visual investigation while the two persons remained in public view"* (emphasis added). *Id.* at 475.

Unlike the police officers in *Battle*, the officers here were in plain clothes and unmarked vehicles. The defendant was not on a public street when first observed by the police, but rather on private property. His observed conduct — walking up a driveway — was not of a suspicious nature. Unlike the defendant in *Battle*, the defendant here ran, not in response to recognizing a police vehicle or police officer, but only after making eye contact with a man in plain clothes who had exited from an unmarked vehicle which had been driven into the driveway. Moreover, "[a]n attempt to avoid contact with or observation by the police, while not enough in itself to justify a suspicion, may be considered along with other facts; an attempt to elude the police once pursuit begins may not be considered." *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984). The record in this case fails to disclose any facts prior to the chase or even during the chase (see note 3), that would justify a reasonable suspicion of criminal conduct. Therefore, we think that *Commonwealth* v. *Battle, supra,* does not control the situation here.[4]

---

[4]Another factor that distinguishes this case from *Battle* is that the defendant in *Battle* ran into the outer hallway of a building and, as the court in that case stated, he "had no right of privacy in the hallway." *Id.* at 474 & 475 n.3. Here, however, the defendant ran into a dwelling, with the police in hot pursuit. Warrantless entry into a dwelling by police is prohibited unless exigent circumstances are present which justify a warrantless intrusion. *Warden, Md. Penitentiary* v. *Hayden*, 387 U.S. 294, 298-300 (1967). *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 699-703 (1979).

That factor would also distinguish this case from *California* v. *Hodari D.*, 111 S. Ct. 1547 (1991), a case decided by the United States Supreme Court after oral argument in this matter. In *Hodari D.*, two police officers were on patrol in an unmarked cruiser in a high crime area. They were dressed in street clothes but wearing jackets with the word "Police" embossed on both front and back. A group of youths, including the defendant, fled at the approach of the cruiser. One of the officers chased the defendant, got ahead of him on a parallel street, then turned back. Looking behind as he ran, the defendant did not turn and see the officer until the officer was almost upon him, whereupon he threw away what appeared to

We believe that an analysis of the question whether a suppression motion, if filed, might have been successful turns on the information in regard to the defendant which was in the officers' possession before the chase began, see *Commonwealth* v. *Thibeau*, 384 Mass. 762, 763-764 (1981), and *Commonwealth* v. *O'Laughlin*, 25 Mass. App. Ct. 998, 999-1000 (1988), or on the information in their possession at the time they made a warrantless entry into the dwelling. *Warden, Md. Penitentiary* v. *Hayden*, 387 U.S. 294, 298-299 (1967), and *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 699-703 (1979). Such information, often consisting of hearsay information, is available at a suppression hearing but not at trial. In fairness to the Commonwealth, it should be given the opportunity to produce such evidence, if it has any, before a new trial is ordered.

Accordingly, the matter is remanded for an evidentiary hearing on the defendant's motion for a new trial. Prior to the hearing, the defendant must file a suppression motion which will be the subject of the hearing. Among other things, the judge should consider whether exigent circumstances were present that permitted the warrantless entry into the dwelling. If the suppression motion is successful, the judge must allow the defendant's motion for a new trial.

The judgment is affirmed. The order denying the defendant's motion for a new trial is vacated, and the matter is re-

---

be a rock. The rock turned out to be cocaine. The lower court held that the defendant had been "seized" when he saw the officer running towards him, that the seizure was unreasonable, and that the evidence must be suppressed.

The Supreme Court reversed. It ruled that when the officer chased the defendant, although it was a show of authority, it did not constitute a seizure where there was no physical contact with the defendant before he abandoned the cocaine. Therefore, it concluded that the abandoned cocaine was not the fruit of an illegal seizure.

The events in *Hodari D.* took place on the public streets, while the events in this case, including the abandonment of the plastic bag, occurred on private property. In addition, the police here pursued the defendant into a dwelling. We take no position with respect to factual situations similar to *Hodari D.* as to whether art. 14 of the Declaration of Rights provides more substantive protection than does the Fourteenth Amendment. See *Commonwealth* v. *Amendola*, 406 Mass. 592, 599 n.3 (1990).

manded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*