After a bench trial in the Ayer District Court, a judge convicted the defendant, Jessica L. Duplak, of possession of a class E substance, Gabapentin.[2] On appeal from the denial of her motion for new trial, which was consolidated with her direct appeal, the defendant argues that counsel was ineffective for failing to (1) file a motion to suppress statements given in the absence of Miranda warnings; (2) object to the admission of those statements at trial; and (3) present evidence that would bolster her claim that she had a prescription to possess Gabapentin. Because we conclude that the defendant's trial counsel did not provide her with effective assistance, we reverse the judge's denial of her motion for a new trial.
Background. The trial judge was warranted in finding the following facts. On August 8, 2015, at about 6:30 A.M. , Townsend police Officer Jeffrey Giles was directed to an in-town residence with his partner, Officer Rochette, to execute an arrest warrant for the defendant. The warrant involved a probation violation. Shortly after their arrival, Giles walked to the back of the house and saw the defendant trying to escape through a bathroom window. He directed her back inside where Rochette arrested her, and Giles then transported her to the police station. Before leaving the residence, Rochette handed a backpack to Giles. Upon arriving at the station, Giles asked the defendant if the backpack was hers; she answered, "Yes." Giles then inventoried the backpack and found twenty-three loose pills inside a CVS prescription bag. The pills were later tested and determined to be a class E controlled substance known as Gabapentin, which has a brand name of Neurontin. The backpack also contained capped and uncapped needles and a plastic baggie with a white substance on it.
Upon finding the pills, Giles asked the defendant if she was currently taking any medication or if there was any reason she should be in possession of these medications. The defendant said, "No." Giles then showed the pills to the defendant, who responded that her "friend asked her to hold onto them for her."
At trial, the defense introduced a more than two-year-old discharge summary from the defendant's hospital stay for opiate dependence showing that on April 17, 2013, she had been "given 30 day supplies of Neurontin 400 mg t.i.d. and Risperdal 1 mg b.i.d. as needed for anxiety." The theory of the defense was that the discharge summary established that she had a valid prescription for the pills in her possession on August 8, 2015.
After conviction, the defendant moved for a new trial. Following a nonevidentiary hearing, the motion judge, who had also been the trial judge, rejected the defendant's claim that the questions posed to the defendant during booking were intended to elicit an incriminatory response and concluded instead that they were asked for the permitted purpose of assessing the defendant's "health and physical state and ensuring her well-being while she was in custody." The judge also rejected the defendant's claim that counsel should have elicited the following evidence in support of her defense: (1) that the defendant was homeless; (2) that the pills were in a CVS bag; and (3) that Gabapentin is generally used to help persons with opiate addiction. The judge reasoned none of this information would have eliminated the primary difficulty with the defense, which was that the authorization for the drugs was more than two years old.
Discussion. We review a judge's decision to deny a motion for a new trial "to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Grace, 397 Mass. 303, 307 (1986). We extend "special deference" to the motion judge where, as here, she was also the trial judge. Ibid."Where a motion for a new trial is based on ineffective assistance of counsel, the defendant bears the burden of proving entitlement to a new trial by showing that the behavior of counsel fell below that of an ordinary, fallible lawyer and that such failing 'likely deprived the defendant of an otherwise available, substantial ground of defence.' " Commonwealth v. Comita, 441 Mass. 86, 90 (2004), quoting from Commonwealth v. Saferian, 366 Mass. 89, 96-97 (1974). The defendant argues that counsel should have moved to suppress her statements made during booking because the officer elicited them in violation of her Miranda rights, and because the statements diminished the defense theory that the defendant had a prescription for the medication.[3]
The failure of counsel to litigate a viable suppression motion may constitute a denial of the defendant's right to the effective assistance of counsel. Commonwealth v. Segovia, 53 Mass. App. Ct. 184, 190 (2001), citing Strickland v. Washington, 466 U.S. 668, 686 (1984). Where, as here, a defendant claims ineffective assistance of counsel, the defendant must show that the motion to suppress would have presented a viable claim and that "there was a reasonable possibility that the verdict would have been different without the excludable evidence." Commonwealth v. Pena, 31 Mass. App. Ct. 201, 205 (1991). If the defendant satisfies this requirement, the Commonwealth then has the burden of demonstrating that the admission of the evidence was harmless beyond a reasonable doubt. Commonwealth v. Segovia, supra.
There are certain exceptions to the rule that a custodial interrogation of a defendant must be preceded by warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). For example, routine biographical questions such as questions about name, age, or address, asked during a defendant's booking, are not interrogation within the meaning of Miranda. Commonwealth v. Kacavich, 28 Mass. App. Ct. 941, 941-942 (1990). However, "[a]lthough a booking officer proceeding down a litany of routine questions may have no investigatory purpose [in asking certain questions], the content of that person's response may be incriminating." Commonwealth v. Woods, 419 Mass. 366, 373 (1995) (emphasis in original). The key inquiry is whether questions posed during booking "are designed to elicit incriminatory admissions." Ibid., citing Pennsylvania v. Muniz, 496 U.S. 582, 602 n.14 (1990).
Here, the questions at issue posed by Officer Giles to the defendant during booking about her ownership of the backpack, and whether she had a prescription for the pills found in the backpack she had just admitted owning, were not routine, biographical questions necessary to complete booking or pretrial services.[4] See Commonwealth v. Acosta, 416 Mass. 279, 283 (1993). Rather, they were questions that the officer should have known were "reasonably likely to elicit an incriminating response." Commonwealth v. Rubio, 27 Mass. App. Ct. 506, 512 (1989), quoting from Rhode Island v. Innis, 446 U.S. 291, 301 (1980). What was effectively a custodial interrogation began when Giles asked the defendant if the backpack was hers. When Giles discovered the pills in the backpack, he asked the defendant if she was currently taking any medications or had a reason to possess these medications. The defendant answered "no"; in response, the officer showed her the bag of pills. At that point, the defendant faced a choice: she could deny or acknowledge that the pills belonged to her. Either way, she would be incriminating herself if she could not provide a prescription or other valid reason for possessing the pills in the backpack she had admitted owning. Commonwealth v. Rubio, supra at 513 (incriminating response "includes any response by an accused, inculpatory or exculpatory, which can be used at trial to help prove guilt"). These questions were more than reasonably likely to elicit an incriminating response and, therefore, we conclude that a motion to suppress the defendant's statements would have had a reasonable chance of succeeding.
Our inquiry then turns to whether "there was a reasonable possibility that the [finding] would have been different without the excludable evidence." Commonwealth v. Pena, 31 Mass. App. Ct. at 205. Such a possibility exists here. The defendant's statements that she had no prescription for the pills and was holding them for a friend directly contradicted the defense she pursued at trial. Clearly, the strength of the Commonwealth's case with respect to the defendant's line of defense-that she possessed a prescription for the medication-would have been seriously weakened had these statements been excluded. Indeed, the prosecutor made this very point in closing argument.[5] While it is true that the primary difficulty the defendant faced was the fact that the hospital discharge summary was two years old, the prosecutor focused instead on the defendant's statements. For this reason, we cannot conclude that the admission of the statements at issue, in particular the defendant's statement that she was holding the pills for a friend, was not harmless beyond a reasonable doubt.[6] Commonwealth v. Segovia, supra.
In sum, "[w]here, as here, the very matter as to which defense counsel has been ineffective becomes one of the linchpins of the prosecutor's closing, the defendant has met her burden of showing prejudice." Commonwealth v. Alvarez, 433 Mass. 93, 104 (2000). Counsel's failure to move to suppress the defendant's statements has "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, supra at 96.
Accordingly, we reverse the order denying the defendant's motion for a new trial, and a new order is to enter allowing the motion. The judgment is reversed, and the finding is set aside.
So ordered.
Reversed.

The Commonwealth dismissed a second count for the illegal possession of Class E Nicotine Polacrilex.

The Commonwealth does not contest that the police did not afford the defendant her Miranda rights.

The one question posed by Giles that gives us pause concerns the inquiry whether the defendant was taking any medications. However, since that question was immediately followed by a question asking the defendant if she had any reason to possess the medications, we cannot say that the question was justified, as the judge ruled, as one related to assessing the defendant's health and safety.

The prosecutor argued that "[t]he only issue whether or not she had a valid prescription, ah, that's been proven that she did not have a valid prescription beyond a reasonable doubt by the fact that she stated herself that she did not have any valid prescriptions, that she had no reason to be in possession of [the pills], and that when showed the actual pills, she says, 'I got them from a friend.' "

In so concluding, we note that the defendant's statement in which she acknowledged ownership of the backpack was likely harmless given the fact that the backpack contained the defendant's personal items including an E.B.T. card and a debit card bearing her name.